TITUS H. KING, SR.,                )
                                   )
      Plaintiff,                   )
                                   )
      v.                           )        1:04CV00007
                                   )
ERMA JEFFERIES, individually,      )
in her official capacity as        )
mayor and an agent for the         )
Town of East Spencer,              )
JOHN H. NOBLE, III,                )
individually, in his official      )
capacity as Alderman and as        )
agent for the Town of              )
East Spencer,                      )
DELORIS HIGH, individually,        )
in his official capacity           )
as Alderman and as agent for       )
the Town of East Spencer,          )
VERNON RUSSELL, individually,      )
in his official capacity as        )
Town Attorney and as agent         )
for the Town of East Spencer,      )
W. RONALD HASH, individually,      )
in his official capacity           )
as Alderman and as agent for       )
the Town of East Spencer,          )
JOHN L. RUSTIN, individually,      )
in his official capacity           )
as Alderman and as agent for       )
the Town of East Spencer,          )
PHRONICE JOHNSON, individually,    )
in his official capacity           )
as Alderman and as agent for       )
the Town of East Spencer,          )
WILLIAM BASSINGER, individually,)
in his official capacity           )
as a law enforcement officer       )
and as agent for                   )
the Town of East Spencer,          )
OFFICER SWEARIN, individually,     )
in his official capacity           )
as a law enforcement officer       )
and as agent for                   )
the Town of East Spencer,          )
BRETT BASS, individually,          )

in his official capacity            )
as a law enforcement officer        )
and as agent for                    )
the Town of East Spencer,           )
JOHN DOE #1, individually,          )
in his official capacity            )
as a law enforcement officer        )
and as agent for                    )
the Town of East Spencer,           )
TOWN OF EAST SPENCER, NORTH         )
CAROLINA,                           )
JAMES SCHMIERER, Officer,           )
individually, in his official       )
capacity as a law enforcement       )
officer and as agent for            )
the Town of East Spencer,           )
JEFF HOOKS, individually,           )
in his official capacity            )
as a law enforcement officer        )
and as agent for                    )
the Town of East Spencer,           )
DARRIN DEARTH, individually,        )
in his official capacity            )
as a law enforcement officer        )
and as agent for                    )
the Town of East Spencer,           )
JEFF ALLEY, individually,           )
in his official capacity            )
as a law enforcement officer        )
and as agent for                    )
the Town of East Spencer,           )
                                    )
        Defendants.                 )


<u>MEMORANDUM OPINION AND ORDER</u>


OSTEEN, District Judge


        Plaintiff Titus H. King, Sr. has filed suit against Erma

Jefferies, John Noble, III, Deloris High, Vernon Russell, W.

Ronald Hash, John L. Rustin, Phronice Johnson, William Bassinger,

James Schmierer, Brett Bass, Jeff Hooks, Darrin Dearth, and Jeff

2

Alley, all both individually and in their capacities as agents of the Town of East Spencer, and against the Town of East Spencer. Plaintiff brings claims under 42 U.S.C. § 1983, alleging that the actions of Defendants in removing him from a meeting of the East Spencer Board of Aldermen violated his right to be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments, his rights to freedom of speech and association under the First and Fourteenth Amendments, and his right to Due Process under the Fourteenth Amendment. He also brings a claim alleging a conspiracy among Defendants in violation of 42 U.S.C. § 1985(2) and (3). Additionally, Plaintiff asserts state law claims for deprivation of rights under the North Carolina Constitution and for malicious prosecution under the common law. This matter is before the court on two motions by Defendants: (1) a motion to dismiss for lack of personal jurisdiction, insufficiency of process, and insufficiency of service of process; and (2) a motion for failure to state a claim on which relief can be granted. Additionally, in response to Defendants' motions, Plaintiff has made two motions: (1) a motion requesting permission to amend his complaint, and (2) a motion requesting an extension of time to complete service.

I.    **BACKGROUND**

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff,

accepting as true all well-pleaded factual allegations. <u>Randall</u> <u>v. United States</u>, 30 F.3d 518, 522 (4th Cir. 1994). The Amended Complaint sets out the following factual allegations.

On January 6, 2003, Plaintiff attended a meeting of the Town of East Spencer Board of Aldermen, a body of which he was a member. Also participating in the meeting as Aldermen were Defendants Jefferies, Noble, High, Hash, Rustin, and Johnson ("the Aldermen"); Defendant Russell was present in his capacity as attorney for the town. Defendant police officers Bassinger, Alley, Dearth, Bass, Hooks, and Schmierer ("the officers") were also at the meeting.

Around 9:30 p.m., the Board announced that it would enter into a closed session.[1] Shortly before the closed session began, Jefferies and some of the other Aldermen asked at least some of the officers to "hang around," in case they were needed during the closed session. (Am. Compl. ¶ 30.)

The Board began the closed session by discussing whether such sessions could be tape recorded by participants. On this topic, the Board heard from Chris Ford, the town administrator, a report, which included the results of discussions with the North Carolina Attorney General's Office and the North Carolina Institute of Government. Following debate, the Board, on a vote

---

[1] A closed session is a session that is not open to the public.

of five to one, adopted a policy that "[e]xecutive sessions of the Board will not be permitted to be taped by anyone." (<u>Id.</u> ¶ 25.)

Until that point in the meeting, both Plaintiff and the town clerk had been tape recording the meeting. After the new policy was adopted, the Aldermen instructed Plaintiff to either turn off his tape recorder or leave the meeting; the town clerk was not so instructed. Plaintiff refused to comply with this instruction. At that time, Defendants Noble and Jefferies ordered the officers to enter the room in which the meeting was taking place. After further debate about the policy, the Aldermen ordered the officers to "forcibly remove [Plaintiff] from the meeting room." (<u>Id.</u> ¶ 33.) In response, the officers grabbed Plaintiff, lifted him from his seat and carried him out of the room, in the process "slamming him with great force on his head against a brick wall and upon a concrete floor." (<u>Id.</u> ¶ 34.) Plaintiff did not resist the officers during his removal.

Several events followed Plaintiff's removal from the meeting. Immediately following his removal, Plaintiff's tape recorder was seized, and he was arrested. He was charged with trespassing on town property, resisting a public officer, and injuring personal property. These charges were eventually dropped. Also, Plaintiff challenged the legitimacy of the Board's tape recording policy in North Carolina Superior Court.

That court determined that closing the meeting had been unlawful under North Carolina law.

On January 7, 2004, Plaintiff filed suit against Defendants Jefferies, Noble, High, Russell, Hash, Rustin, Johnson, Bassinger, Bass, the Town of East Spencer, and Officer John Doe #1.[2]  On February 26, 2004, Plaintiff filed an amended complaint, adding as defendants Officers Schmierer, Hooks, Dearth, and Alley.  The latter four defendants were not served process at that time.

On March 14, 2004, Defendants filed a motion to dismiss for failure to state a claim as to all defendants, and a motion to dismiss for lack of personal jurisdiction, insufficiency of process, and insufficiency of service of process as to Defendants Bassinger, Schmierer, Hooks, Dearth, and Alley.  In response to the motion to dismiss for failure to state a claim, Plaintiff sought the permission of the court to file a second amended complaint.  Plaintiff has also requested an extension of time to serve process on certain specified defendants.

---

[2]  Also named in the suit was the League of Municipalities. All claims against that defendant were voluntarily dismissed.

## II. Defendants' Motions to Dismiss

Defendants have made motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and Rules 12(b)(2), (4), and (5). They seek dismissal of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) on a number of grounds. First, the Aldermen, along with Defendant Russell, claim absolute immunity from suit under § 1983 on the basis that, at the time of the events giving rise to the complaint, they were participating in a legislative activity. Second, the officers claim qualified immunity from suit under § 1983 based on their status as public officials. Third, as a defendant in its own capacity, the Town of East Spencer seeks dismissal on the grounds that the complaint does not state a claim against it. Fourth, all defendants assert that Plaintiff's allegations regarding violations of the Equal Protection Clause fail to state a claim on which relief can be granted. Fifth, all defendants seek to have the state law claims against them dismissed on the following grounds: (1) the court should not retain jurisdiction over those claims if it grants Defendants' motion as to the federal claims, (2) North Carolina does not recognize claims directly under its constitution against individual defendants, and (3) Defendants are entitled to public official immunity under state law. Sixth, Defendants request that the court abstain from deciding this case out of respect for the interest of the state of North Carolina in the matter.

7

Finally, Defendants Bassinger, Schmierer, Hooks, Dearth, and
Alley seek dismissal under Rules 12(b)(2), (4), and (5) on the
grounds that they have not been served with process.

### A. Defendants' Motion Under Rule 12(b)(6)

A defendant's motion to dismiss under Rule 12(b)(6) of
the Federal Rules of Civil Procedure tests the legal sufficiency
of the pleadings, but does not seek to resolve disputes
surrounding the facts. <u>Republican Party of N.C. v. Martin</u>, 980
F.2d 943, 952 (4th Cir. 1992). A court must determine only if
the challenged pleading fails to state a claim upon which relief
can be granted. Fed. R. Civ. P. 12(b)(6). The issue is not
whether the plaintiff will ultimately prevail on his claim, but
whether he is entitled to offer evidence to support the claim.
<u>Revene v. Charles County Comm'rs</u>, 882 F.2d 870, 872 (4th Cir.
1989). A pleading "should not be dismissed for failure to state
a claim unless it appears beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct.
99, 102 (1957). The pleading must be liberally construed in the
light most favorable to the nonmoving party and the allegations
made therein taken as true. <u>Jenkins v. McKeithen</u>, 395 U.S. 411,
421, 89 S. Ct. 1843, 1849 (1969).

### 1. Absolute Immunity

Defendants have moved for dismissal of claims against the Aldermen and Russell on the grounds that they are entitled to absolute immunity from suit under § 1983. Local legislators are entitled to absolute immunity from § 1983 liability for activities properly categorized as "legislative." Bogan v. Scott-Harris, 523 U.S. 44, 54, 118 S. Ct. 966, 972 (1998). Whether an act is legislative turns on its nature. Id. at 54, 118 S. Ct. at 973. Because the inquiry is into the nature of the act rather than into any formal designation, whether an act is or is not legislative may be subject to disagreement. Compare, e.g., Collinson v. Gott, 895 F.2d 994, 997 n.1 (4th Cir. 1990) (Phillips, J., concurring in the judgment) (treating the administration of a public meeting by the president of a board of county commissioners as an executive activity), with id. at 1008 (Wilkinson, J., concurring in the judgment) (treating the same as a legislative activity).

In this case, those defendants seeking absolute immunity have failed to establish that they are entitled to it because they have failed to establish that the activity complained of by Plaintiff is properly characterized as legislative activity. Plaintiff has not been precise in identifying which of the alleged activities give rise to each of his complaints; however, it appears that the nucleus of his complaint is that the Aldermen

9

wrongfully ordered that he be removed from the meeting and that, by doing so, the members of the Board violated his various constitutional rights.[3]

The act of ordering someone from a meeting is potentially characterized as either legislative or executive. Such an act is legislative in the sense that it involves the proceedings of a meeting of a legislative body; it is executive in the sense that it involves the procedure of the meeting rather than its substance. In claiming the activity was legislative, Defendants cite Collinson, but that case only highlights the question, since the judges that concurred in the opinion disagreed over how a similar act should be characterized. Until presented with an argument for treating Plaintiff's ejection as legislative, the court declines to grant the motion to dismiss on the grounds of absolute immunity.

### 2. Qualified Immunity

Defendant police officers Bassinger, Schmierer, Bass, Hooks, Darrin, Dearth, and Alley seek dismissal on the grounds that they are entitled to qualified immunity from suit under § 1983. When the defense of qualified immunity is raised, "a

---

[3] Defendants suggest, in part, that the complaint arises from the adoption by the Aldermen of a rule prohibiting the tape recording of closed sessions. The court agrees that, with regard to the passage of this rule, the analysis of absolute immunity is different from that presented above. Nonetheless, the court concludes that Plaintiff's claims do not arise from the passage of the rule but out of his ejection from the meeting.

10

ruling on that issue should be made early in the proceedings so
that the costs and expenses of trial are avoided where the
defense is dispositive." <u>Saucier v. Katz</u>, 533 U.S. 194, 200, 121
S. Ct. 2151, 2155-56 (2001). To assess a claim of qualified
immunity, a court must first determine whether a constitutional
right has been violated. <u>Brown v. Gilmore</u>, 278 F.3d 362, 367
(4th Cir. 2002). If so, the court must determine whether the
right was so clearly established at the time of the event in
question that it would have been clear to an objectively
reasonable officer that his conduct violated that right. <u>Id.</u>
The officers have asserted qualified immunity with regard to the
claims of unlawful arrest and excessive use of force.

### a. Arrest

In evaluating Plaintiff's claims of unlawful
arrest, the first step is to determine whether Plaintiff has
alleged a violation of a constitutional right. Plaintiff has
alleged that he was seized and arrested in violation of the
Fourth Amendment of the U.S. Constitution. To establish a
violation of the Fourth Amendment, Plaintiff must show he was
arrested without probable cause. <u>Brown</u>, 278 F.3d at 367.
Probable cause is determined from the totality of the
circumstances known to the officer at the time of the arrest.
<u>Id.</u> For probable cause to exist, there need only be enough
evidence to warrant the belief of a reasonable officer that an

11

offense has been or is being committed.  Id.  This, in turn,
depends on both the actions of the arrestee, as known to the
officer, and the officer's understanding of the offense for which
the arrest was made.  Id. at 368.  Once a warrantless arrest has
been judged reasonable through a probable cause determination
made by a neutral magistrate, the continuing pretrial seizure of
a criminal defendant is reasonable.  Brooks v. City of Winston-
Salem, N.C., 85 F.3d 178, 184 (4th Cir. 1996).

Here, the officers had probable cause to arrest.  Police
authority to remove people from local government proceedings is
based on N.C. General Statute § 143-318.17, which makes guilty of
a misdemeanor anyone who "willfully interrupts, disturbs, or
disrupts an official meeting and who, upon being directed to
leave the meeting by the presiding officer, willfully refuses to
leave."  There is dispute between the parties over whether this
law was correctly applied.  The dispute has two points:  (1)
whether Plaintiff actually was being "disruptive" within the
meaning of the law, and (2) whether Plaintiff had a right under
North Carolina law to tape record the meeting, which would
entitle him to disobey any instruction to the contrary.  This
court need not resolve these issues to make a determination of
probable cause.  To have probable cause to seize, the officers
did not need actual knowledge that Plaintiff had violated the
law; rather, they needed to have a reasonable belief that a crime

12

had been committed. Plaintiff states in his complaint that, after the officers entered the meeting, "the defendants continued to debate the newly adopted audio tape ban rule and policy and its merits." (Am. Compl. ¶ 33.) The officers were then instructed by the Aldermen to remove Plaintiff from the meeting room. Thus, the officers had seen Plaintiff refuse to comply with instructions given him by the other members of the Board of Aldermen, pursuant to a rule of procedure everyone in the room, other than Plaintiff, thought valid. A reasonable officer under these circumstances would believe an offense had been committed. Having concluded that the officers did have probable cause to seize Plaintiff, the court holds that the officers are entitled to qualified immunity on charges relating to unlawful seizure of the person.

Even if the court concluded that the officers had acted without probable cause, it would still be necessary to determine whether the right was so clearly established at the time of the event in question that it would have been clear to an objectively reasonable officer that his conduct violated that right. It has long been established that a seizure of the person may not be made without probable cause; however, with a fact-specific standard such as this, the application of the standard to novel situations does not always provide clearly established answers. Given the issues surrounding the interpretation of the statute in

question here, it would not have been clear to a reasonable officer that he was arresting someone without probable cause. Thus, regardless of whether probable cause actually existed, the officers are entitled to qualified immunity from charges of unlawful arrest. Accordingly, these charges against them are dismissed.

### b. Excessive Force

To evaluate the officers' claim of qualified immunity on the claim of excessive use of force, the first step is to determine whether, taken in the light most favorable to Plaintiff, the facts show the officers' conduct violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures, i.e., seizures made with excessive force. Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003). Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a balancing of the intrusion on the individual's Fourth Amendment interests against the governmental interests in using force. Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871 (1989). This balancing "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id., 109 S. Ct. at 1872. These

14

facts and circumstances must be evaluated from the perspective of the reasonable officer at the scene of the arrest. <u>Id.</u>, 109 S. Ct. at 1872.

According to this standard, Plaintiff has alleged sufficient facts to indicate the officers used excessive force during his arrest. Plaintiff has indicated the officers seized him at the direction of the Aldermen after he refused to leave or turn off his tape recorder, that he "offered no resistance to the officers while they were carrying him out" (Am. Compl. ¶ 34), and that the officers "slamm[ed] him with great force on his head against a brick wall and upon a concrete floor" (<u>id.</u>). Applying the balancing test, the weight is in Plaintiff's favor. The government had no interest in physically harming Plaintiff under the circumstances: the crime was not severe, there was no threat to the safety of the police or others, and Plaintiff did not resist arrest. Even from the perspective of the officers present at the scene, physical abuse of Plaintiff was unnecessary. Thus, the court concludes, for the purposes of this motion only, that Plaintiff's Fourth Amendment right was violated.

The court must next determine whether, at the time of the alleged violation, the right to be free from arrest made with excessive force was clearly established. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is

15

doing violates that right." Anderson v. Creighton, 483 U.S. 635
640, 107 S. Ct. 3034, 3039 (1987). "If the law did not put the
officer on notice that his conduct would be clearly unlawful,"
qualified immunity should be granted. Saucier, 533 U.S. at 202,
121 S. Ct. at 2156.

The court concludes that, at the time of the events in
question, it was clearly established that the level of force used
against Plaintiff was impermissible. The right to be free from
arrest made with force that is objectively unreasonable was
established in Graham in 1989. It is true that "Graham does not
always give a clear answer as to whether a particular application
of force will be deemed excessive by the courts." Saucier, 533
U.S. at 205, 121 S. Ct. at 2158. Nonetheless, there are at least
some circumstances in which an officer will know a level of force
is impermissible. E.g., Turmon v. Jordan, 405 F.3d 202, 208 (4th
Cir. 2005) (finding that it would have been clear to an officer a
certain level of force was excessive); Jones, 325 F.3d at 534—35
(same).

Here, Plaintiff has not alleged a case in which the
application of Graham would be unclear. Plaintiff has alleged
that he offered no resistance to the officers, but that they
harmed him as they removed him from the meeting. A reasonable
officer would have known that intentional physical abuse of an
unresisting arrestee was unlawful. Because the right to be free

16

of arrests made with excessive force was well established at the time of Plaintiff's arrest, the officers are not entitled to qualified immunity at this stage of the litigation.

### 3. Liability of the Town of East Spencer

Defendants have also moved for dismissal of all § 1983 charges against the Town of East Spencer ("the Town"). This motion is made on two grounds. First, Defendants assert that Plaintiff has not alleged sufficient facts to make a claim for municipal liability. Second, Defendants assert that the Town is entitled to official immunity derived from that of the individuals involved.

Local governing bodies may be sued under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Department of Soc. Servs., 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36 (1978). These bodies may also be sued for unconstitutional actions taken pursuant to unofficial customs. Id. Under certain circumstances, a municipality may be held liable under § 1983 for its failure to train its officers adequately . City of Canton, Ohio v. Harris, 489 U.S. 378, 387, 109 S. Ct. 1197, 1204 (1989). However, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the

17

rights of persons with whom the police come into contact." Id.
at 388, 109 S. Ct. at 1204. There is no requirement that a
plaintiff detail specific facts underlying such a claim or allege
more than one act to establish a policy of deliberate
indifference. Jordan v. Jackson, 15 F.3d 333, 337-39 (4th Cir.
1994).

In this case, Plaintiff has alleged sufficient facts to
support a claim of official policy on the part of the Town. He
has included the Town as a defendant in claims of unlawful
arrest, excessive force, and malicious seizure arising out of the
acts of the officers. (Am. Compl. ¶ 58.) He has further alleged
the Town "acted with deliberate indifference to the proper
training and supervision of its officers" with regard to
procedures for arrest, search, and seizure. (Id. ¶ 15.) Taken
together, these support a § 1983 claim against the Town.

The Town has also claimed official immunity from suit.
Regarding official immunity for municipalities, the Supreme Court
has specifically stated that "unlike various government
officials, municipalities do not enjoy immunity from suit—either
absolute or qualified—under § 1983." Leatherman v. Tarrant
County Narcotics Intelligence and Coordination Unit, 507 U.S.
163, 166, 113 S. Ct. 1160, 1162 (1993). Based on this authority,
the Town may not claim official immunity.

18

Neither of the Town's assertions support dismissal of the claims against it. Plaintiff has sufficiently alleged the existence of an official policy to support a § 1983 claim. Further, the Town is not entitled to official immunity. For these reasons, the motion to dismiss claims against the Town is denied.

### 4. Plaintiff's Claim Regarding Denial of Equal Protection

Defendants also moved for dismissal on Plaintiff's Eighth Cause of Action, which they describe as an allegation of "a violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution." (Defs.' Br. Support Mot. Dismiss at 11.) In fact, Plaintiff's Eighth Cause of Action does not directly allege a violation of the Equal Protection Clause; rather, it asserts two other causes of action: (1) a conspiracy to impede justice in state court with the intent to deprive him of equal protection of the laws in violation of 42 U.S.C. § 1985(2), and (2) a conspiracy to deprive him of the equal protection of the laws in violation of 42 U.S.C. § 1985(3).[4] With regard to the latter provision, the law

_____

[4] Because the heading for this cause of action in the complaint refers to § 1983, it at first appears to be alleging only a violation of the Equal Protection Clause, so the apparent confusion of Defendants is understandable. Additionally, the fact that Plaintiff, in his Brief in Support of Response to Defendants' Motion Dismiss, argues as though Defendants correctly characterized his claim only adds to the confusion. Nonetheless,
(continued...)

Plaintiff claims to be the subject of the conspiracy is the Equal Protection Clause. These claims are not equivalent to a cause of action under § 1983 for a violation of the Equal Protection Clause.

Neither § 1985(2) nor § 1985(3) requires that a defendant succeed in denying a plaintiff equal protection of the laws to be liable for conspiracy. For example, to sustain a cause of action under the second clause of § 1985(2) (the clause relevant here), a plaintiff must show

> two or more persons conspire[d] for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2). Courts have interpreted this language to also require that the plaintiff make "an allegation of class-based animus." E.g., Portman v. County of Santa Clara, 995 F.2d 898, 909 (9th Cir. 1993). To sustain a cause of action under § 1985(3), a plaintiff must show

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a

_____

[4](...continued)
¶ 103 of the Amended Complaint clearly alleges violations of the provisions of § 1985.

> consequence of an overt act committed by the defendants
> in connection with the conspiracy.

Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995).  Neither section contains a specific requirement that an underlying law be violated.

In regard to this cause of action, Defendants' brief addressed only the issue of whether there has been a violation of the Equal Protection Clause.  Because such a violation is not a prerequisite to liability under § 1985(2) and (3), and because Defendants did not address whether pleading requirements with respect to those causes of action have been met, the court denies Defendants' motion with respect to this charge.

### 5.   State Law Claims

In addition to the federal claims discussed above, Plaintiff brings several claims under the North Carolina Constitution, as well as a claim of malicious prosecution under the common law.  Defendants have asked the court to dismiss these claims on several grounds.  First, Defendants ask that if the federal claims are dismissed, the state claims be dismissed due to lack of jurisdiction.  Second, Defendants ask that claims against them in their individual capacities brought directly under the North Carolina Constitution be dismissed because such claims do not exist under North Carolina law.  Finally, Defendants seek public official immunity for all state law claims.

21

The first two requests can be quickly resolved.  First, Plaintiff's federal claims have not all been dismissed, therefore, the court will retain jurisdiction over the state law claims.  Second, claims under the North Carolina Constitution may not be brought against individuals; such claims may only be brought against defendants in their official capacities.  Corum v. University of N.C., 413 S.E.2d 276, 292–93 (N.C. 1992).  Thus, the court will dismiss the constitutional claims against Defendants in their individual capacities.

Finally, Defendants seek dismissal of the remaining state law claims because, as public officials, they are immune from suit under North Carolina law.  The North Carolina doctrine of public official immunity "protects public officials from individual liability for negligence in the performance of their governmental or discretionary duties."  Campbell v. Anderson, 576 S.E.2d 726, 730 (N.C. Ct. App. 2003).  This is true as long as those duties are performed without corruption or malice.  Id. The doctrine is not limited to claims in negligence, but applies to claims that involve performance of job duties in a negligent way.  See id.  ("The questions of reasonableness concerning the search, seizure, and arrest address issues of whether defendant was negligent in performing his official duties.").  Negligence is considered to be an element of a malicious prosecution claim. See id. (granting summary judgment on a malicious prosecution on

the basis of public official immunity).  Defendants have
suggested Plaintiff has alleged no facts that would allow the
court to infer that they acted with malice or corruption.

The sole remaining state law charge brought against
Defendants in their individual capacities is the claim of
malicious prosecution.  This claim arises from the fact that
Plaintiff was criminally prosecuted for resisting a public
officer, injury to personal property, and second degree trespass
based on his actions while he was being removed from the room in
which the Board meeting was taking place.  Plaintiff alleges
these charges were initiated by Defendants "[i]n an attempt to
'cover-up' their wrong doing." (Am. Compl. ¶ 44.)  Plaintiff
further alleges Defendants "either used or caused to be used
fraudulent and perjured testimony" during his trial. (Id. ¶ 47.)
This is a sufficient allegation of malice.  As stated above, the
officers were justified in seizing Plaintiff, but they may not
have been justified in using the level of force they used.  If
Plaintiff can ultimately satisfy the requirements of a claim of
malicious prosecution against Defendants and can demonstrate the
prosecution was an attempt to cover up the use of excessive force
by the officers, Defendants would not be entitled to public
official immunity.

For these reasons, claims under the North Carolina
Constitution brought against Defendants in their individual

capacities will be dismissed.  Defendants' motion to dismiss the claim of malicious prosecution against Defendants in their individual capacities will be denied.  All state law claims against Defendants in their official capacities remain, as the court has not been asked to consider them.

### 6.    Abstention

Defendants also request that the court abstain from deciding issues related to the validity of the rule prohibiting tape recording out of respect for state courts and the state political process.  The federal courts have the discretion to refrain from hearing certain types of cases, "founded on the recognition that state, not federal, courts are the final expositors of state law, and thus reflect[ing] a justifiable diffidence on the part of federal courts confronted with novel state law questions."  <u>Fair Assessment in Real Estate Ass'n v. McNary</u>, 454 U.S. 100, 120 n.4, 102 S. Ct. 177, 188 n.4 (1981).  For example, when adequate state court review is available, a federal court sitting in equity should abstain from reviewing cases involving difficult questions of state law or a state's administration of its own regulatory schemes.  <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315, 333–34, 63 S. Ct. 1098, 1107 (1943); <u>Prentiss v. Allstate Ins. Co.</u>, 87 F. Supp. 2d 514, 517–18 (W.D.N.C. 1999).  Nonetheless, a federal district court may not invoke <u>Burford</u> abstention to dismiss claims at law for money damages.

24

<u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 730-31, 116 S. Ct. 1712, 1727-28 (1996). In light of the language of <u>Quackenbush</u>, this rule likely applies to the other abstention doctrines as well. <u>See</u> <u>id.</u> at 731, 116 S. Ct. at 1728 ("Under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary.").

In this case, all of Plaintiff's claims are made at law; Plaintiff does not specifically seek declaratory or injunctive relief for any of his claims. Nor are Plaintiff's claims conditioned on the court declaring any law or ordinance unconstitutional. Plaintiff's claims arise from the actions by Defendants in ordering him removed and actually removing him from the Board meeting. Plaintiff has asserted that the Aldermen did not have authority under N.C. General Statute § 143-318.17 to have him removed; he has not challenged the constitutionality of that statute. Because Plaintiff has brought an action for damages that requires no discretionary relief, it would be improper for the court to abstain from proceeding with the case.

**B. Defendants' Motion to Dismiss Under Rule 12(b)(2), (4), & (5)**

Defendants Bassinger, Schmierer, Hooks, Dearth, and Alley seek dismissal of the claims against them under Rule 12(b)(2), (4), and (5) on the grounds that they were not served with copies of the summons and complaint. These defendants filed

their motion on March 15, 2004.  In his response to this motion, Plaintiff provided evidence that he had served Defendant Bassinger.  He indicated that he would soon serve the other movants,[5] but he did not, at that time, provide evidence of service on those individuals.  On August 29, 2005, the court contacted Plaintiff's attorney, instructing him to provide the court with evidence that the remaining movants had been served. Plaintiff's attorney was unable to do so.  The court concludes that service on Defendant Bassinger was proper, but that no service was accomplished on Defendants Schmierer, Hooks, Dearth, and Alley.  Accordingly, the Motion to Dismiss as to the latter four defendants will be granted.

## III. PLAINTIFF'S MOTIONS

### A.   Plaintiff's Motion to Amend

In response to issues raised in Defendants' Motion to Dismiss, Plaintiff has moved to amend his complaint.  Amendments to a complaint after a responsive pleading has been served may only be made by leave of court or by written consent of the opposing party.  Fed. R. Civ. P. 15(a).  A party seeking amendment from the court need not file a supporting brief under the local rules, but "must state good cause" for the amendment. L.R. 7.3(j).  Once a motion is filed, leave to amend "shall be

---

[5]  The final date for service of process had not yet arrived at the time Plaintiff filed the response.

26

freely given when justice so requires." Fed. R. Civ. P. 15(a).
Under the rule's liberal construction, see Ward Elecs. Serv.,
Inc. v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987),
motions to amend should be granted absent extraordinary
circumstances.  Such circumstances include undue delay, bad faith
or dilatory motive, a repeated failure to cure deficiencies,
undue prejudice to the opposing party, and futility of amendment.
Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).  A
motion to amend is futile, and thus should be denied, if the
proposed amendment "is clearly insufficient because of
substantive or procedural considerations."  Goewey v. United
States, 886 F. Supp. 1268, 1284 (D.S.C. 1995).

     Here, the amendment proposed by Plaintiff would be futile.
It is not futile in the sense that Plaintiff's claims will be
dismissed despite the change.  Rather, Plaintiff seeks to add
only one paragraph, in which he states "[t]hat the defendant
Russell openly participated in the debate as a participant and
not as counsel providing advice to the Board."  (Proposed Second
Am. Compl. ¶ 23.)  This was added at least in part as a response
to Defendants' assertion that it was unclear in the first Amended
Complaint what had been charged against Russell.  The proposed
amendment is ineffective for three reasons:  (1) Defendants did
not actually seek dismissal of the charges against Russell on
that ground, (2) none of Plaintiff's claims depend on anyone

27

participating in the debate, and (3) Plaintiff had already indicated that Russell had been a participant in the debate. Because Plaintiff's amendment has no effect on the proceedings, the court considers it futile and therefore will deny Plaintiff's request.

**B.    Plaintiff's Motion to Extend Time to Complete Additional Service**

In light of the inability of Plaintiff's attorney to produce evidence of the service of process on Defendants Schmierer, Hooks, Dearth, and Alley,[6] Plaintiff has requested an extension of time to accomplish service on those defendants. According to Federal Rule of Civil Procedure 4(m), if service is not accomplished within 120 days after the filing of the complaint, the court may grant an extension of time "if a plaintiff shows good cause for the failure."  The court concludes that an extension of time is not merited.  The time period for service expired over a year before Plaintiff filed his motion. Plaintiff has been aware for over a year that service on those defendants was contested, and Plaintiff's attorney should have been aware that a bare assertion that service would be accomplished in the future would not be sufficient to meet Plaintiff's burden on the matter.  Plaintiff claims that circumstances have recently arisen that made it impossible for

---

[6] See _supra_ Part II.B.

Plaintiff to produce receipts showing that the summons and complaint were delivered by certified mail. Nonetheless, Plaintiff has since been given the opportunity to produce other evidence of service and has not done so. In light of these factors, the court concludes that Plaintiff has not shown good cause for failure to serve process on Defendants Schmierer, Hooks, Dearth, and Alley.

## IV.  CONCLUSION

Defendant police officers have demonstrated that they are entitled to qualified immunity from suit under § 1983 for claims of wrongful arrest and detention set out in Plaintiff's first and second causes of action. Defendants have also demonstrated that Plaintiff may not bring suit directly under the North Carolina Constitution against Defendants in their individual capacities. Defendants have not demonstrated that they are entitled to dismissal of the other claims at this time. For these reasons,

IT IS ORDERED that Defendants' Motion to Dismiss for Failure to State a Claim [11] is **GRANTED** in part and **DENIED** in part.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Failure of Process, and Failure of Service of Process [11] is **GRANTED** as to Defendants Schmierer, Hooks, Dearth, and Alley and **DENIED** as to Defendant Bassinger.

IT IS FURTHER ORDERED that Plaintiff's Motion to Amend [21] is **DENIED**.

29

IT IS FURTHER ORDERED that Plaintiff's Motion to Extend Time to Complete Additional Service [24] is **DENIED.**

This the 25th day of November 2005.

United States District Judge